**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. _____


STEPHEN and CHRISTINA THOMAS; MELISSA JANKOWSKI; and DAWN ATCHISON and TODD REYNOLDS,

      Plaintiffs,

v.

DOUGLAS COUNTY BOARD OF EDUCATION and DOUGLAS COUNTY SCHOOL DISTRICT,

      Defendants.

───────────────────────────────────────────────────────

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**
───────────────────────────────────────────────────────

**INTRODUCTION**

1.      This is a federal civil rights action to vindicate the Free Exercise, Establishment, Equal Protection, Free Speech, and Due Process Clause rights of three Douglas County, Colorado families.  On March 15, 2016, the Douglas County Board of Education adopted the School Choice Grant Program:  a school choice program that provides grants to students, who, in turn, may use the grants to attend the private school of their parents' choice.  Religious schools, however, are barred from the program, and a student, therefore, may not use her grant to attend a religious school, even if her parents believe it is the best school to meet her educational needs.  The exclusion of religious options from the program violates the Free Exercise, Establishment, Equal Protection, and Free Speech Clauses of the United States Constitution, as well as the Due Process Clause, which guarantees the fundamental right of parents to control and direct the education and upbringing of their children.

## PARTIES, JURISDICTION, AND VENUE

2.      Plaintiffs Stephen (Steve) and Christina (Tina) Thomas are a married couple who reside in Highlands Ranch, Colorado.  They have three children:  Caroline, Ian, and Nathan. Steve and Tina have sent Caroline and Ian to Valor Christian High School, but even with the help of financial aid from the school, they have had to make significant financial sacrifices to do so.  Nathan is currently attending eighth grade at a Douglas County public school, and Steve and Tina wish to send him to Valor Christian High School, as well.  Doing so, however, will be a substantial financial struggle for the family.

3.      Melissa Jankowski is a single mother who resides in Castle Rock, Colorado.  She has two children:  Alexander and Victoria.  With the help of financial aid from the school, Melissa sends Alexander, a high school freshman, to Valor Christian High School.  Melissa intends to send Victoria, who is currently in eighth grade at a Douglas County public school, to Valor Christian High School, as well.  Doing so, however, will be a significant financial strain on Melissa.

4.      Dawn Atchison and Todd Reynolds are a married couple who reside in Parker, Colorado.  They have two children:  Grace and Chloee.  With the help of financial aid from the school, Dawn and Todd sent Grace to Valor Christian High School; she graduated in 2015.  They plan to send Chloee, who currently attends eighth grade at a Douglas County public school, to Valor Christian High School, as well, but doing so will pose a considerable financial burden on the couple.

5.      Defendant Douglas County Board of Education is a seven-member elected body that governs and administers the public schools in the Douglas County School District.  The

Board, acting through its authorized representatives, has initiated and undertaken the unlawful actions alleged herein and intends to continue that course of conduct unless restrained by order of this Court.

6.     Defendant Douglas County School District is a school district organized under Article IX, sections 2 and 15 of the Colorado Constitution and Title 22, Article 32 of the Colorado Revised Statutes.  The School Choice Grant Program will be implemented by the Douglas County School District.

7.     Plaintiffs' action, filed pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 2201(a) and 2202, seeks a declaration that the School Choice Grant Program's exclusion of religious options is unconstitutional on its face and as applied to Plaintiffs, as well as an injunction enjoining the exclusion's enforcement.  Under 28 U.S.C. §§ 1331 and 1343(a), this Court possesses jurisdiction over the action.

8.     Pursuant to 28 U.S.C § 1391(b), venue is proper in this Court.

## STATEMENT OF FACTS

### THE SCHOOL CHOICE GRANT PROGRAM

9.     On March 15, 2016, the Douglas County Board of Education (hereinafter "Board") enacted, by policy revision, the School Choice Grant Program on a pilot basis.  A true and correct copy of the policy revision (hereinafter "Policy") is attached to this complaint as Attachment #1.

10.    The School Choice Grant Program is a revised version of the Choice Scholarship Program, which was adopted in 2011 but later invalidated by the Colorado Supreme Court.

Petitions for certiorari to review the Colorado Supreme Court's judgment are currently pending in the United States Supreme Court under docket numbers 15-556, 15-557, and 15-558.

11.     Under the School Choice Grant Program, the Douglas County School District (hereinafter "District") awards up to 500 grants annually to Douglas County elementary and secondary students.  *See* Policy ¶ F.1.

12.     To be eligible for a grant, a student must reside in Douglas County and have attended one of the District's public schools for at least the previous school year.  *See* Policy ¶ D.5.

13.     Students who receive a grant may use it to attend any private school that participates in the School Choice Grant Program and that has accepted the student.  *See* Policy ¶ D.1.

14.     Grants are worth the lesser of:  (1) the tuition charged at the private school the student's parents have selected; and (2) 85 percent of per pupil revenue, as defined by Colo. Rev. Stat. § 22-54-103(9.3).  *See* Policy ¶ C.6.

15.     Grants are paid in the form of a check made out to the parents of the student, who must restrictively endorse the check to the private school they have selected for their child, for the purpose of paying tuition.  *See* Policy ¶¶ C.4, D.7.c.

16.     Private schools inside and outside the boundaries of the District may participate in the School Choice Grant Program, so long as they meet the standards set forth in the policy creating the program and enter a contract with the District setting forth the rights and obligations of the school and District.  *See* Policy ¶¶ E.1, .2, .3, .7.

17.     Religious private schools, however, are barred from the School Choice Grant Program; only secular private schools may participate.  *See* Policy ¶¶ B.6, E.2; *see also id.* ¶¶ A.6, A.11.

18.     The District's justification for excluding religious private schools from the School Choice Grant Program is the judgment of the Colorado Supreme Court in *Taxpayers for Public Education v. Douglas County School District*, 351 P.3d 461 (2015).  *See* Policy ¶ A.6; *see also id.* ¶¶ A.3, A.11, B.6, E.2.c.

19.     *Taxpayers for Public Education* concerned the legality of the Choice Scholarship Program, an elementary and secondary scholarship program adopted by the Board in 2011.

20.     Unlike the School Choice Grant Program, the Choice Scholarship Program allowed both religious and non-religious schools to participate.

21.     Opponents of the Choice Scholarship Program challenged it in state court, arguing, among other things, that it violated:  (1) Article IX, section 7 of the Colorado Constitution, which bars pubic funding of schools "controlled by any church or sectarian denomination"; and (2) Colorado's Public School Finance Act,  Colo. Rev. Stat. §§ 22-54-101 to -135.

22.     Three of the seven justices on the Colorado Supreme Court concluded that the Choice Scholarship Program violated Article IX, section 7 of the Colorado Constitution.  Another justice concluded that it violated the Public School Finance Act and did not reach the Article IX, section 7 claim; she was the only justice to conclude that it violated the Public School Finance Act.  The remaining three justices concluded that the Choice Scholarship Program did not violate Article IX, section 7.

23.     Citing *Taxpayers for Public Education*, *see* Policy ¶ A.6, the District maintains that it "is required to exclude religious schools from the School Choice Grant Program under the Colorado Supreme Court's current interpretation of Article IX, Section 7 of the Colorado Constitution."  Policy ¶ A.11; *see also id.* ¶¶ A.3, B.6, E.2.c.

24.     In *Taxpayers for Public Education*, however, there was no controlling opinion from the Colorado Supreme Court on the question of whether Article IX, section 7 of the Colorado Constitution requires the exclusion of religious schools from a program like the School Choice Grant Program.  The court was split 3-3 on that question.

25.     Moreover, in an earlier Colorado Supreme Court case, *Americans United for Separation of Church and State Fund, Inc. v. State*, 648 P.2d 1072 (1982), the Colorado Supreme Court unanimously held that that Article IX, section 7 does *not* require the exclusion of all religious schools from a student grant program.  That holding is undisturbed by *Taxpayers for Public Education*.

26.     Finally, even if the judgment in *Taxpayers for Public Education* did require the exclusion of religious schools from the School Choice Grant Program, such exclusion violates the Free Exercise, Establishment, Equal Protection, Free Speech, and Due Process Clauses of the United States Constitution.  In fact, the three-justice dissent in *Taxpayers for Public Education* recognized the serious federal constitutional problems in interpreting Article IX, section 7 of the Colorado Constitution as the three-justice plurality did—that is, as requiring the exclusion of religious schools—and the Board and District *agree* that the plurality's interpretation conflicts with the United States Constitution.  They have even petitioned the United States Supreme Court for certiorari on that ground.  A true and correct copy of their petition is attached to this

complaint as Attachment #2 (Pet. Writ Cert., *Douglas County Sch. Dist. v. Taxpayers for Pub. Educ.*, No. 15-557 (U.S. Oct. 28, 2015)).

27.     Accordingly there is no permissible justification for excluding religious schools from the School Choice Grant program.

### THE PLAINTIFFS

*Steve and Tina Thomas*

28.     Stephen (hereinafter "Steve") and Christina (hereinafter "Tina") Thomas are a married couple from Highlands Ranch, Colorado.  They have three children:  Caroline, Ian, and Nathan.  Steve and Tina both work outside the home in order to help meet expenses and provide for their family.

29.     Caroline attended public schools through eighth grade, but Steve and Tina wanted to send her to Valor Christian High School (hereinafter "Valor").  Although Steve and Tina appreciated the wonderful academic and athletic opportunities that Valor offers, they wanted, above all, to provide Caroline a strong spiritual foundation in high school.

30.     Affording tuition, however, was going to be a struggle for them.  Accordingly, in 2011, they applied for and received a scholarship for Caroline under Douglas County's Choice Scholarship Program, discussed in paragraphs 19 through 22, above.

31.     Steve and Tina intended to use the scholarship to send Caroline to Valor, which Douglas County approved to participate in the Choice Scholarship Program and which had accepted Caroline for admission.

32.     The Choice Scholarship Program, however, was enjoined on the eve of the 2011-12 school year, and Caroline consequently lost her scholarship.  Because of generous financial assistance from Valor, Steve and Tina nevertheless managed to send her to Valor.

33.     Caroline will likely attend college in the 2016-17 school year, and if she does, Steve and Tina will incur the cost of part or all of her tuition.

34.     Like Caroline, Ian also attended public schools through eighth grade.  But as with Caroline, Steve and Tina wanted to send Ian to Valor for high school, primarily because of the strong spiritual foundation it would provide him, but also because of the strong academic and athletic (specifically, soccer) opportunities it provides.  With financial assistance from the school, they were able to do so.

35.     Ian is now a senior at Valor and will graduate this year.  But even with the assistance that Steve and Tina have received from the school, paying tuition has been a serious financial strain on the family.  Moreover, next year, he will be attending college, and although he has received some financial aid, Steve and Tina will incur the cost of a substantial portion of his college tuition.

36.     Steve and Tina's third child, Nathan, is currently an eighth grader at Mountain Ridge Middle School, a Douglas County public school.  As they did with their other children, Steve and Tina would like to send Nathan to Valor for high school, primarily because of the strong spiritual foundation it would provide him, but also because of the strong academic and athletic (specifically, soccer) opportunities it provides.  In fact, the United States Department of Education awarded Valor its National Blue Ribbon Schools award for 2015.

37.     Nathan has already applied to and been accepted by Valor.  Affording the tuition, however, is going to be a significant struggle for Steve and Tina, as it has been in past years. Although they have received some financial assistance from Valor, they will be incurring new expenses in the coming year, including college tuition for Ian and, likely, Caroline, as well. Steve and Tina anticipate having to greatly reduce, if not eliminate, the amount they have been contributing toward retirement savings in order to meet these expenses.

38.     Nathan is eligible to apply for a grant under Douglas County's newly-adopted School Choice Grant Program, and receiving a grant would go a long way toward helping Steve and Tina afford the tuition at Valor.

39.     Because of the School Choice Grant Program's exclusion of religious schools, however, Valor is unable to participate in the program and Nathan, therefore, would not be able to use a grant to attend the school his parents believe is best for him.

40.     Nathan, however, could use a grant if Steven and Tina were willing to choose a non-religious school for him.

***Melissa Jankowski***

41.     Melissa Jankowski is a single mother from Castle Rock, Colorado.  She has two children, Alexander (hereinafter "Alex") and Victoria (hereinafter "Tori"), and works full time in order to provide for them.

42.     With the help of financial aid from the school, Melissa sends Alex, a high school freshman, to Valor.  Prior to that, Alex attended Rocky Heights Middle School, a Douglas County public school.

43.     Melissa chose to send Alex to Valor for high school because of its religious character and the spirituality it would help develop in Alex, as well as the school's small class sizes and strong college preparatory curriculum.

44.     Tori is in eighth grade and, as her brother did, currently attends Rocky Heights Middle School.

45.     Melissa would also like to send Tori to Valor for high school because of its religious character, spiritual development, small class sizes, and strong college preparatory curriculum.

46.     Tori has been accepted for admission at Valor, but paying for two children to attend the school is going to be a considerable struggle for Melissa, even with the financial assistance the school will provide.  Moreover, because of the cost of sending her children to Valor, Melissa will not be able to save as much as she otherwise would to pay for their eventual college education.

47.     Although Alex is not eligible to apply for a grant under Douglas County's newly-adopted School Choice Grant Program, as he is already attending a private school and eligibility is limited to students currently attending a public school, Tori is eligible to apply for a grant under the program.  Receiving a grant would go a long way toward helping Melissa afford Tori's tuition at Valor.

48.     Because of the School Choice Grant Program's exclusion of religious schools, however, Valor is unable to participate in the program and Tori, therefore, would not be able to use a grant to attend the school her mother believes is best for her.

49.     Tori, however, could use a grant if Melissa were willing to choose a non-religious school for her.

***Dawn Atchison and Todd Reynolds***

50.     Dawn Atchison and Todd Reynolds are a married couple from Parker, Colorado. They have two children, Grace and Chloee.  Dawn and Todd both work outside the home to provide for their family and meet its expenses.

51.     For middle school, Grace attended Parker Core Knowledge Charter School, a Douglas County public school.  Dawn and Todd appreciated the attention Grace received because of the school's small size and low student/teacher ratio.

52.     Dawn and Todd knew, however, that if Grace went to a public high school, she would not receive the same level of attention.  They therefore decided to send Grace to Valor because of its small class sizes and low student/teacher ratio, as well as the Christian values it imbues.

53.     Affording tuition at Valor, however, was going to be a burden for Dawn and Todd.  Accordingly, in 2011, they applied for and received a scholarship for Grace under Douglas County's Choice Scholarship Program, discussed in paragraphs 19 through 22, above.

54.     Dawn and Todd intended to use the scholarship to send Grace to Valor, which Douglas County approved to participate in the Choice Scholarship Program and which accepted Grace for admission.

55.     The Choice Scholarship Program, however, was enjoined on the eve of the 2011-12 school year, and Grace consequently lost her scholarship.  Because of financial assistance

from Valor, Dawn and Todd were still able to send her to Valor, and she graduated from the school in 2015.

56.     Grace is currently attending college.  Although she has received some financial aid, Dawn and Todd are paying approximately half of her tuition.

57.     Dawn and Todd's other daughter, Chloee, is currently an eighth grader at Parker Core Knowledge Charter School.  As they did with Grace, Dawn and Todd would like to send her to Valor for high school—again, because of its small class sizes, low student/teacher ratio, and Christian character.

58.     Valor has accepted Chloee for admission, but affording the tuition is going to be a burden for Dawn and Todd.  Although they have received some financial assistance from the school, they are responsible for the remainder of Chloee's tuition, as well as for Grace's college tuition.

59.     Chloee is eligible to apply for a grant under Douglas County's newly-adopted School Choice Grant Program, and receiving a grant would go a long way toward helping Dawn and Todd afford the tuition at Valor.

60.     Because of the program's exclusion of religious schools, however, Valor is unable to participate in the School Choice Grant Program and Chloee, therefore, would not be able to use her grant to attend the school her parents believe is best for her.

61.     Chloee, however, could use a grant if Dawn and Todd were willing to choose a non-religious school for her.

## COUNT I:  FREE EXERCISE OF RELIGION

62.     By this reference, Plaintiffs incorporate each and every allegation set forth in

paragraphs 1 through 61 of this Complaint as though fully set forth herein.

63.     The Free Exercise Clause of the First Amendment to the United States

Constitution provides, "Congress shall make no law . . . prohibiting the free exercise" of religion.

64.     The Free Exercise Clause applies to states and their subdivisions and

municipalities through the Fourteenth Amendment to the United States Constitution.

65.     The Free Exercise Clause protects against governmental hostility toward religion

and requires strict neutrality toward religion.

66.     Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c are not neutral with respect to religion

and are not laws of general applicability.  Rather, they discriminate against religion on their face,

in that they prohibit private religious options in the School Choice Grant Program while allowing

private non-religious options.

67.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c

condition receipt of a public benefit on the forgoing of religious convictions and free exercise

rights.  By denying grants to children whose parents wish to send them to a religious school, they

force parents to either forgo the receipt of a grant or forgo their right and conviction to educate

their child in a religious school.

68.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c

substantially burden the free exercise rights of parents whose conviction is to educate their child

in a religious school.

69.     The Board and District have no compelling, substantial, or even legitimate interest in prohibiting private religious options in the School Choice Grant Program while allowing private non-religious options.

70.     Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c are not narrowly tailored to achieve, nor are they rationally related to, any interest the Board and District purport to have.

71.     Even if Article IX, section 7 of the Colorado Constitution required the exclusion of private religious options from the School Choice Grant Program, which it does not, compliance with Article IX, section 7 could not justify their exclusion.

72.     Article IX, section 7 of the Colorado Constitution is a "Blaine Amendment"; it was motivated by an anti-religious and, more specifically, anti-Catholic animus, and its history, text, and operation evince an object of anti-religious animus.  It has as its object and purpose the suppression of religion and religious conduct.  As such, it is an impermissible justification for Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c.

73.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c violate the Free Exercise Clause of the First Amendment to the United States Constitution insofar as they prohibit private religious options in the School Choice Grant Program.

## COUNT II:  ESTABLISHMENT OF RELIGION

74.     By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 73 of this Complaint as though fully set forth herein.

75.     The Establishment Clause of the First Amendment to the United States Constitution provides, "Congress shall make no law respecting an establishment of religion."

76.     The Establishment Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the United States Constitution.

77.     The Establishment Clause requires neutrality toward religion.  Accordingly, government may neither favor, nor disfavor, religion over non-religion or one religion over another.

78.     By prohibiting private religious options in the School Choice Grant Program while allowing private non-religious options, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c are hostile toward and disapproving of religion, both on their face and as applied to Plaintiffs.

79.     The Board and District do not have a secular legislative purpose for prohibiting private religious options in the School Choice Grant Program.  Rather, their purported purpose for prohibiting such options is compliance with Article IX, Section 7 of the Colorado Constitution, which was motivated by an anti-religious and, more specifically, anti-Catholic animus; it has as its object and purpose the suppression of religion and religious conduct.

80.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c have the principal and primary effect of inhibiting religion, in that they deny grants to children whose parents wish to send them to a religious school.  In this regard, they condition receipt of an otherwise available public benefit on parents' willingness to forego their religious conviction and right to have their child educated in a religious school.  They thereby create a substantial disincentive to enrollment in religious schools.

81.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c violate the Establishment Clause of the United States Constitution insofar as they prohibit private religious options in the School Choice Grant Program.

## COUNT III:  EQUAL PROTECTION OF THE LAWS

82.     By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 81 of this Complaint as though fully set forth herein.

83.     The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution provides, "No State shall . . . deny to any person within its jurisdiction the equal protection of the laws."

84.     The Equal Protection Clause applies to states and their subdivisions and municipalities.

85.     The Equal Protection Clause prohibits government from discriminating on the basis of religion, which is a suspect classification for equal protection purposes.

86.     By prohibiting private religious options in the School Choice Grant Program while allowing private non-religious options, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c discriminate on the basis of religion, both on their face and as applied to Plaintiffs.

87.     The Board and District have no compelling, substantial, or even legitimate interest in prohibiting private religious options in the School Choice Grant Program while allowing private non-religious options.

88.     Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c are not narrowly tailored to achieve, nor are they rationally related to, any interest the Board and District purport to have.

89.     Even if Article IX, section 7 of the Colorado Constitution required the exclusion of private religious options from the School Choice Grant Program, which it does not, compliance with Article IX, section 7 could not justify their exclusion.

90.     The Equal Protection Clause prohibits a state constitution from making it more difficult for one group of citizens than for all others to seek aid from the government, especially, but not only, when the disability imposed was born of animosity.

91.     An interpretation and application of Article IX, section 7 that excludes private religious options from the School Choice Grant Program makes it more difficult for one group of citizens than for all others to seek aid from the government.

92.     Article IX, section 7 of the Colorado Constitution, moreover, is a "Blaine Amendment"; it was motivated by an anti-religious and, more specifically, anti-Catholic animus, and its history, text, and operation evince an object of anti-religious animus.

93.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c discriminate on the basis of religion and therefore violate the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution insofar as they prohibit private religious options in the School Choice Grant Program.

## COUNT IV:  FREEDOM OF SPEECH

94.     By this reference, Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 93 of this Complaint as though fully set forth herein.

95.     The Free Speech Clause of the First Amendment to the United States Constitution provides, "Congress shall make no law . . . abridging the freedom of speech."

96.     The Free Speech Clause applies to states and their subdivisions and municipalities through the Fourteenth Amendment to the United States Constitution.

97.     The Free Speech Clause prohibits restrictions of speech that are based on content or viewpoint.

98.     Parents' decisions concerning, and provision for, the education of their children are a form of expression and speech protected by the Free Speech Clause.

99.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c restrict parents' expression and speech based on content and viewpoint, because they deny grants only to those children whose parents wish to send them to a religious school.

100.    The Board and District have no compelling, substantial, or even legitimate interest in prohibiting private religious options in the School Choice Grant Program while allowing private non-religious options.

101.    Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c are not narrowly tailored to achieve, nor are they rationally related to, any interest the Board and District purport to have.

102.    Even if Article IX, section 7 of the Colorado Constitution required the exclusion of private religious options from the School Choice Grant Program, which it does not, compliance with Article IX, section 7 could not justify their exclusion.

103.    Article IX, section 7 of the Colorado Constitution is a "Blaine Amendment"; it was motivated by an anti-religious and, more specifically, anti-Catholic animus, and its history, text, and operation evince an object of anti-religious animus.  As such, it is an unconstitutional and impermissible justification for Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c.

104.    On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c violate the Free Speech Clause of the Fourteenth Amendment to the United States Constitution insofar as they prohibit private religious options in the School Choice Grant Program.

## COUNT V:  DUE PROCESS

105.     By this reference, the Plaintiffs incorporate each and every allegation set forth in paragraphs 1 through 104 of this Complaint as though fully set forth herein.

106.     The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides, "No state shall . . . deprive any person of life, liberty, or property, without due process of law."

107.     The Due Process Clause applies to states and their subdivisions and municipalities.

108.     Among the liberties protected by the Due Process Clause is the liberty of parents to control and direct the education and upbringing of their children.  This liberty is fundamental.

109.     On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c condition receipt of a public benefit on the forbearance of the liberty of parents to control and direct the education and upbringing of their children.  By denying grants to children whose parents wish to send them to a religious school, they force parents to either forgo the receipt of a grant or forgo their right to send their child to the school of their choice.

110.     The Board and District have no compelling, substantial, or even legitimate interest in prohibiting private religious options in the School Choice Grant Program while allowing private non-religious options.

111.     Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c are not narrowly tailored to achieve, nor are they rationally related to, any interest the Board and District purport to have.

112.    Even if Article IX, section 7 of the Colorado Constitution required the exclusion of private religious options from the School Choice Grant Program, which it does not, compliance with Article IX, section 7 could not justify their exclusion.

113.    Article IX, section 7 of the Colorado Constitution is a "Blaine Amendment"; it was motivated by an anti-religious and, more specifically, anti-Catholic animus, and its history, text, and operation evince an object of anti-religious animus.  As such, it is an unconstitutional and impermissible justification for Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c.

114.    On their face and as applied to Plaintiffs, Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution insofar as they prohibit private religious options in the School Choice Grant Program.

### PRAYER FOR RELIEF

Plaintiffs respectfully request the following relief:

A.    A declaratory judgment by the Court that Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c, on their face and as applied to Plaintiffs, violate the Free Exercise, Establishment, Equal Protection, Free Speech, and Due Process Clauses of the United States Constitution insofar as they exclude religious options from the School Choice Grant Program;

B.    A preliminary and permanent injunction prohibiting Defendants from enforcing Policy ¶¶ A.3, A.6, A.11, B.6, and E.2.c insofar as they exclude religious options from the School Choice Grant Program;

C.    One dollar in nominal damages;

D.    An award of attorneys' fees, costs, and expenses pursuant to 42 U.S.C. § 1988; and

E.      Any other legal and equitable relief the Court may deem appropriate and just.


DATED:  April 19, 2016


                                Respectfully submitted,

                                s/ Michael E. Bindas
                                Michael E. Bindas
                                INSTITUTE FOR JUSTICE
                                10500 NE 8th Street, Suite 1760
                                Bellevue, WA 98004
                                Telephone:  (425) 646-9300
                                FAX:  (425) 990-6500
                                Email:  mbindas@ij.org

                                Timothy D. Keller
                                INSTITUTE FOR JUSTICE
                                398 S. Mill Avenue, Suite 301
                                Tempe, AZ 85281
                                Telephone:  (480) 557-8300
                                FAX:  (480) 557-8315
                                Email:  tkeller@ij.org

                                Attorneys for Plaintiffs Stephen and Christina
                                Thomas; Melissa Jankowski; and Dawn
                                Atchison and Todd Reynolds